[Civ. No. 5837.   Third Appellate District.—June 23, 1937.]

ARGONAUT MINING COMPANY, LTD. (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMIS-SION and BLASS JUROVICH, Respondents.

Ralph McGee and Keith & Creede for Petitioner.

Everett A. Corten for Respondents.

THOMPSON, J.—By means of *certiorari* the petitioner seeks to reverse an order of the Industrial Accident Commission denying a rehearing and also asks this court to annul the award of compensation which was allowed the respondent, Blass Jurovich, for disability incurred as a result of silicosis which he acquired in the course of his employment in its mine.

It is contended the commission exceeded its jurisdiction in determining that Jurovich incurred his disability in the course of his employment with petitioner for the reason that the evidence is undisputed that he was aware of that ailment while he was previously employed with other mining companies. It is also asserted his right to compensation is barred by the provisions of section 11 (1) of the Workmen's Compensation Act for failure to present the claim for disability within six months from the date when he first acquired knowledge of his affliction.

The record shows that Blass Jurovich is forty-five years of age. He has a wife and three children. He began work-

ing as a miner for the South Eureka Mining Company in 1908. From 1918 to 1921 he worked in the Central Eureka Mine on Sutter Creek in Amador County. In 1925 he worked for the Argonaut Mining Company for several months. He shifted about from one mine to another for several years, going back in 1929 for a period of time to the Argonaut mine. In 1933 he was working in the Eureka mine at Sutter Creek. During the last-mentioned period he noticed for the first time that he was frequently short of breath. He felt pains in the chest, and he had lost some weight. Jurovich consulted a physician, who examined him and sent him to Sacramento for X-ray pictures. The doctor then told him that he had tuberculosis and advised him to quit mining. He did not do so, but returned to work for the Argonaut Mining Company. In 1935 he went to work in the El Dorado Limestone mine, but soon became incapacitated for work on account of the progress of his disease of silicosis, and finally ceased working on that account February 16, 1936.

During the latter years in which the claimant was engaged in mining he operated a jack-hammer in dry drilling of rock in an atmosphere permeated with mineral dust. He repeatedly said that the condition in the mines where he worked was "dry and dusty". The respondents concede "that the employee some time in 1933 was made aware of the true nature of his illness or disease and that his condition was due to dust from the mines in which he worked or had worked".

When Jurovich abandoned his work in the mine in February, 1936, he was examined by a physician and definitely pronounced a victim of silicosis, which is defined to be a deposit of particles of silica in the tissues; specifically a chronic fibroid condition of the lungs or bronchial lymphatic glands, produced by inhalation of minute particles of silica. (Gould's Medical Dictionary, 3d ed.) The patient was sent to the Weimar Sanitarium for treatment. Dr. Churchill, the attending physician of that institution, testified that Jurovich was afflicted with a chronic disease of silicosis in its third stage. The doctor was asked: "Q. From the record and his testimony, do you believe that he got the silicosis from working in mines? A. I think so."

A claim for compensation for disability was filed with the Industrial Accident Commission April 24, 1936. After a thorough hearing the commission adopted findings determining that Blass Jurovich sustained temporary total dis-

ability from injury to the lungs which occurred February 16, 1936, "consisting of industrial silicosis caused by exposure to deleterious materials during the entire periods of his employment" with the several mining enterprises which were mentioned and which appeared in opposition to the demand for award. The commission further found that the claim was not barred by the statute of limitations, and apportioned its aggregate award of $13.42 per week, from February 16, 1936, against four named mining companies, among which was this petitioner, a self-insured mining company. The amount of award against the Argonaut Mining Company is $2.06 per week. Its petition for a rehearing was denied. The petitioner seeks to review that order and to cancel the award on the ground that the commission was without jurisdiction for the reasons heretofore stated.

■ We are of the opinion the evidence adequately supports the findings of the commission to the effect that the claimant incurred and developed silicosis in the course of his employment as a miner while he was engaged in working for the four companies against which the award was granted, and that disability on that account which caused the termination of his service occurred on or about February 16, 1936.

The contributing cause of silicosis is well known to the medical profession and to mining industries. It is prevalent among employees in mines, potteries, stone and slate factories, and in file-cutting and metal-grinding enterprises, where the air is permeated with minute particles of stone, quartz, slate or metal dust which is inhaled to the detriment of the tissues, glands and lungs. Some men appear to be immune from the disease, but a large proportion of those who are engaged in such pursuits are susceptible to silicosis. The incurring and development of this disease depends somewhat upon the constitution of the employee and upon the conditions under which he works. The course of the disease may be rapid or gradual, sometimes extending over a period of several years before the victim is finally disabled for the performance of manual labor. That was evidently true of the claimant in the present proceeding.

The compensation for the affliction of such occupational diseases for which awards are allowed under the Workmen's Compensation Act of California does not necessarily attach from the first sympton of the existence of the ailment. Occupational diseases in their incipiency may not impair the

ability of an employee to fully and efficiently perform his work. Mere knowledge of the existence of an occupational disease, without further evidence that the ailment has impaired the efficiency of the workmen's service, will not entitle him to compensation. It is a well-known fact that many such afflictions develop slowly, and the patient becomes disabled from performing his work only after the lapse of many years. The course of the disease of silicosis sometimes extends over a period of twenty years or more. Such diseases in their incipiency are not incurable.

██ The law clearly distinguishes between a physical injury sustained as the result of an accident and injuries which develop from progressive occupational diseases like silicosis. In the latter class of cases compensation is authorized only when the employee is so disabled from the progress of the disease as to prevent him from efficiently performing his work. That is a mere common sense statement of the law. In accordance with that principle, the California cases have determined that injuries sustained as the result of occupational diseases are compensable only when the disease *culminates in disability*. That construction is in accordance with the spirit of the Workmen's Compensation Act. Section 69a of that act provides that:

"Whenever this act, or any part or section thereof, is interpreted by a court, it shall be liberally construed by such court with the purpose of extending the benefits of the act for the protection of the persons injured in the course of their employment."

The statute of limitations does not begin to run against a claim for compensation for disability incurred as the result of an occupational disease until the employee knows, or when by the exercise of due care and diligence, he is presumed to know, that he has an occupational disease which has progressed to the extent that he is so disabled that the efficiency of his work is appreciably affected thereby.

██ In the present case there is substantial evidence in support of the findings of the commission that, while Blass Jurovich did know in 1933 that he was afflicted with silicosis from inhaling mineral dust in the mines where he had been employed, there is no evidence that he knew, or by the exercise of due diligence should have known, that the disease had disabled him to the extent that the efficiency of his work was impaired until February 16, 1936, when he

abandoned the job. The burden of proving that the claim for compensation was barred by the statute of limitations was upon the respondents who opposed the claim. We are unable to say they have sustained this burden by showing that the claimant had any knowledge of the extent of his ailment, or that he should have had such knowledge as would entitle him to recover compensation.

In the case of *Marsh* v. *Industrial Acc. Com.*, 217 Cal. 338 [18 Pac. (2d) 933, 938, 86 A. L. R. 563], upon which the petitioner in this case chiefly relies, the court says with respect to silicosis as an occupational disease that it is classified as an "injury" under the Workmen's Compensation Act, as distinguished from an "accident". After an elaborate review of the authorities with respect to the fixing of the time when liability for compensation for disability occurs, which results from a progressive occupational disease, the court says:

" 'From our study of the subject we are brought to the conclusion that in the case of a latent and progressive disease . . . it cannot reasonably be said that the injury dates necessarily from the last day of exposure to a dust-laden atmosphere, and that the prescriptive period begins to run from that day. Rather, according to our view, should the date of the injury be deemed the time when the accumulated effects *culminate in a disability* traceable to the latent disease as the primary cause, and by the exercise of reasonable care and diligence it is discoverable and apparent *that a compensable injury* was sustained in performance of the duties of the employment.

" ' . . . In order to justify an award for disability or death due to an occupational disease, there must always be established an unbroken causal connection between the injury and the employment or the condition under which the employee is required to carry on his work. The connection must be such as to show that the disease or injury was proximately caused by the employment or the condition of work; and when such unbroken chain of causation is found to exist, then all physical consequences flowing from the disease or injury are proper elements for consideration in determining the merits of a claim for compensation or death benefits.' "

It will be observed that the court neither determines that the liability for compensation for an occupational disease begins, nor that it does not date *from the last exposure* to

the dust-laden atmosphere. It is said that it does not *necessarily* begin with that date. On the contrary, the court does say that under such circumstances the liability is incurred when the physical condition "culminates in a disability". It is then said that the mere existence of a disability is not sufficient to set the statute of limitations running against the claim for compensation. There must also be *knowledge* of the existence of the ailment on the part of the afflicted person, or the opportunity of acquiring such knowledge by the exercise of due care and diligence in order to set the statute of limitations in motion.

Regarding the same subject, it is said in *Associated Indemnity Corp.* v. *Industrial Acc. Com.*, 124 Cal. App. 378 [12 Pac. (2d) 1075, 1076] :

"No specific date of contact with the substance can be charged with being the date of injury, inasmuch as the injurious consequences of the exposure are the product of a period of time rather than a point of time; consequently the afflicted employee can be held to be 'injured' only when the accumulated effects of the deleterious substance manifest themselves, and *this would be when the employee becomes disabled* and entitled to compensation."

It is true that in the opinion last mentioned the court neglected to include the further element of knowledge on the part of the employee of his disability and the cause thereof, or the implied knowledge thereof which would attach for a lack of due care or diligence to ascertain that fact. This omission is covered by the latest utterance of the court in a similar silicosis proceeding in which the Supreme Court denied a hearing. (*Price* v. *Industrial Acc. Com.*, 9 Cal. App. (2d) 213 [49 Pac. (2d) 294].) Quoting with approval from the Marsh case, *supra*, regarding the rule with respect to the statute of limitations, the court says:

" 'The date of injury' . . . is not the date of the last or of any particular exposure to the dust but *'the time when the accumulated effects cumulate in a disability* traceable to the latent disease as the primary cause, and by the exercise of reasonable care and diligence it is discoverable and apparent that a compensable injury was sustained in performance of the duties of the employment.' . . .

" . . . In cases of this type the running of the prescription period begins when the presence of silicosis was or should have been diagnosed as the primary and efficient cause of

the injury. It appears quite obvious from the evidence that petitioner . . . had no idea or reason to believe that he was suffering from a compensable injury, silicosis, arising out of and incurred in the course of his employment. . . .

''An employee is not to be deprived of compensation because he incorrectly diagnoses his condition. . . . The Industrial Accident Commission herein erred in its finding that the petitioner should have discovered the character of his condition prior to the date of his final termination of work.''

In the case last cited the denial of compensation by the commission was set aside on the theory that in spite of certain symptoms which the claimant previously knew that he had, it was held to be error on the part of the commission to assume that the claimant should have known the cause or the nature of his ailment prior to the termination of his employment. The same rule should also apply with respect to knowledge on the part of a claimant as to the *extent* of his ailment.

The question regarding the possession of knowledge on the part of a claimant, of the cause of his ailment, or as to whether the disease has progressed to an extent which constitutes compensable disability, is primarily one of fact to be determined by the commission. This court will not interfere with its conclusions in that regard unless there is a total absence of evidence to support that finding.

In the present case it will be observed that while Blass Jurovich did know in 1933 that he was afflicted with some ailment, he did not know the nature or extent of that ailment, and the physician informed him that it was tuberculosis. It does not appear that he then knew his difficulty was likely to culminate in a compensable disability or that it would impair his efficiency or prevent him from continuing to work in the mines. The commission found that the compensable disability occurred February 16, 1936. In the absence of evidence to the contrary, or even where there is a conflict of evidence upon that subject, in support of the finding of the commission we must assume that the claimant had no knowledge of the nature or seriousness of his ailment prior to the time when he felt that it was necessary for him to abandon his work. Certainly the record contains no evidence that he knew, or by the exercise of due diligence that he should have known, prior to the time when he left his employment in the mine on February 16, 1936, that he was

suffering from a compensable disability. The burden was on the petitioner in this proceeding to affirmatively allege and prove that the claimant had such knowledge or in the exercise of due diligence should have had that knowledge prior to the time fixed by the commission. We are of the opinion the petitioner failed to sustain that burden. There is substantial evidence to support the finding of the commission that the claim is not barred by the statute of limitations.

The petitioner further contends that the claim is barred by failure to serve the employer with notice of the hearing thereof within thirty days from the time the claimant first became aware of the fact that he was suffering from silicosis, as required by the provisions of section 15 of the Workmen's Compensation Act. Upon that issue the commission found that the defendants *were not prejudiced* by failure to serve the notice.

There is no merit in the contention that the claim was barred by failure to serve notice of the hearing pursuant to section 15. This petitioner answered the demand and was represented by counsel at the hearing. No evidence was adduced at that hearing to show that this company was "misled or prejudiced" by failure to serve the notice. The burden was on the employer to prove that it was prejudiced by failure to serve the notice. (*United States Fid. & Guar. Co.* v. *Industrial Acc. Com.*, 84 Cal. App. 226 [257 Pac. 895].) Section 19 (d) (5) of the Workmen's Compensation Act provides:

" . . . The following are affirmative defenses, and the burden of proof shall rest upon the employer to establish them:

"(5) Prejudice to the employer by failure of the employee to give notice, as required by section fifteen."

The findings and award are adequately supported.

The order and the award are therefore affirmed.

Plummer, J., and Pullen, P. J., concurred.